UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAROL M. MOTTOLA,

              Plaintiff,

-against-

CRAVATH, SWAINE & MOORE LLP;
ROSALIA A. FAZZONE; FAZZONE LAW;
ESTATE OF LOUIS MARK DENEGRE;
SUSAN FABIANI; LINDA FABIANI;
JACQUELINE FABIANI; GARY STANCO;
PAGET STANCO; JAMES E. TOLAN; and
DIANE DENEGRE;

              Defendants.

24-CV-2744 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff Carol M. Mottola brings this action, *pro se*, alleging that Defendants violated the civil provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). She names as Defendants: (1) the law firms, Cravath, Swaine & Moore ("Cravath") and Fazzone Law; (2) extended family members, Rosalia A. Fazzone, Susan Fabiani, Linda Fabiani, Jacqueline Fabiani, Gary Stanco, Paget Stanco, and Diane Denegre; (3) the Estate of Louis Mark DeNegre, Plaintiff's deceased great uncle; and (4) James E. Tolan, a lawyer, as well as a friend or acquaintance of Louis Mark DeNegre.

    By order dated May 20, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of the fees. For the reasons set forth in this order, the Court dismisses the complaint for failure to state a claim.

**STANDARD OF REVIEW**

    The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

This action concerns Plaintiff's decades-long dispute with her family. She previously filed in this court a lawsuit against now-deceased family members, Diana Rita and Louis Mark DeNegre, asserting state-law defamation claims. *Mottola v. DeNegre*, ECF 1:12-CV-3465, 1 (LAP) (S.D.N.Y. June 14, 2012) ("*Mottola I*"). The Court first describes the facts alleged in *Mottola I*, and then turns to the facts alleged in this new action.[1]

**A.     *Mottola I***

On May 1, 2012, Plaintiff filed an action in this court against Diana Rita and Louis Mark DeNegre, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332. Diana Rita DeNegre and Plaintiff's now-deceased mother, Adelaide Fabiani ("A.F.") Mottola, were first cousins. Plaintiff asserted state law claims of defamation, claiming that the DeNegres

> assumed and asserted a leadership role in the family and exploited plaintiff for their own gain as they systematically pursued a network comprised of plaintiff's classmates, teachers, and co-workers from which they and their favored relatives benefitted socially and economically while they harmed plaintiff with deception and slanderous, distressing speech and actions.

*Mottola I*, ECF 1:12-CV-3465, 1, at 1. In her 2012 complaint, Plaintiff chronicled a series of incidents from 1971, when she was invited to visit Diana Rita's home before entering her first year at an all-girls school, to August 1, 2007, when Diana Rita and Louis Mark told Plaintiff that she was unfit to choose a doctor to treat her mother's tumor. Plaintiff asserted that they both engaged in a slanderous campaign and influenced the people in her life to turn against her, resulting in her hospitalization for anxiety in October 1993 and February 2004. Judge Loretta A.

---

[1] The Court quotes from both complaints verbatim. All spelling, grammar, and punctuation are as in the original, unless noted otherwise.

Preska dismissed the defamation claim for failure to state a claim. *Id.* (Doc. No. 8.) The Court of Appeals affirmed the dismissal.

**B.    Current Action**

Plaintiff now brings claims under RICO against several other family members. First, she brings claims against Diana DeNegre, who is the daughter of Diana Rita and Louis Mark, and the executor of Louis Mark's estate, which Plaintiff also names as a Defendant. Plaintiff contends that Diana is "[r]eplacing, continuing the unlawful" conduct of Louis Mark. (ECF 1, at 7.)

Second, Plaintiff brings claims against the children of the now-deceased Nicholas Fabiani, who was Plaintiff's mother's sibling. Nicholas was married to Theresa Fabiani, also known as Terry, who is not named as a defendant. Plaintiff describes Terry's larger role in the family as follows: "In the small world, constitution-less state that DeNegre called family all crooked pot holed nightmarish detours lead to T. Fabiani (Terry) the heartless, manipulative, supremely sardonic, narcissist at the center of an artificial family." (*Id.* at 21.) She also claims that "T[erry] Fabiani and R[ita] DeNegre had mutually compatible unlawful objectives: both sought to take Plaintiff from A.F. Mottola and if she did not give her up, if Plaintiff could not be lured, they would, as set forth more fully below, essentially, take the Plaintiff's life." (*Id.*). Nicholas and Terry' two children, Jackie, whose "ultimate objective is to dominate, restrain, and hold the Plaintiff captive" (*id.* at 17-18), and Susan, are Plaintiff's cousins.

Third, Plaintiff sues another cousin, Jackie, whom she describes as "chief mocker of Plaintiff" (*id.* at 18), and a fourth cousin, Linda Fabiani. Plaintiff contends that Linda, Jackie, and Susan "unlawfully interfered with Plaintiff's employment at the Cravath firm," (*id.* at 18), one of the two law firms Plaintiff sues.

4

Here:
---

Fourth, Plaintiff sues Cravath, asserting claims arising out of events that occurred in 1985, when Plaintiff entered a two-year Cravath paralegal program. Plaintiff claims that she "was a victim of in office crime [and] constructively discharged by [Cravath]." (*Id.* at 15.)

Fifth, Plaintiff sues another cousin, Rosalia Fazzone, who currently is a lawyer in Denver at Fazzone Law. Rosalia participated in the Cravath paralegal program. Plaintiff more recently learned that "R. Fazzone has long been Plaintiff's very odd, very scary, covert malicious persecutor." (*Id.* at 16.)

Sixth, Plaintiff brings claims against Paget Stanco, who was a niece of Diana Rita and Mark Louis. She also sues Gary Stanco, who is either Paget's husband or father. Gary "is a beneficiary of conspiracies against the Plaintiff." (*Id.* at 18.)

Finally, Plaintiff sues James E. Tolan, a "retired attorney" and "long time co-conspirator of M[ark] DeNegre" (*id.* at 22), who "sought through quite a few people including Robert F. Kennedy Jr. to pressure and persuade Plaintiff that she must (or at least should) attend the same school as her cousins, defendants J[ackie] Fabiani and S[usan] Fabiani[.]" (*Id.* at 23.)

The complaint describes Defendants' alleged criminal conduct as follows.[2] First, she contends that when she was nine or ten years old, Defendants conspired to kidnap her and attempted a kidnapping:

> Uncle N. Fabiani, and daughter S. Fabiani and one or more of her sisters sought to entice Plaintiff to live with them. Plaintiff was less than sixteen years of age, indeed approximately nine or ten years of age. They did not seek Plaintiff's mother's acquiescence. It was a very intense moment for Plaintiff who looked up to her mother who said, 'That's my daughter!' Plaintiff felt relieved, reassured, secure, and considered the matter closed.

---

[2] Plaintiff cites to several federal criminal statutes but she does not provide facts attributing criminal conduct on the part of Defendants to each referenced federal crime. The Court only summarizes specific conduct attributed to Defendants.

(*Id.* at 41.) She also contends that Defendants, who she describes as a "crime family" (*id.* at 44), attempted another kidnapping later that day:

> Later that day at dusk, plaintiff was walking down the street alone on her way to or returning from the corner store as was her usual post dinner routine. Plaintiff noticed a car moving very slowly. There were several people in the car talking, animated; they were trying to attract plaintiff's attention and did indeed catch Plaintiff's attention and curiosity. Two of them pressed their faces against the glass, plaintiff was baffled, perturbed, thought the persistence of the people perplexing. The slowly moving car continued and then the car unexpectantly stopped, plaintiff saw a leg or arm . . . they opened the rear car door. Plaintiff was immediately frightened and ran. Plaintiff did not have to think about it, dwell on it. With fear and certainty plaintiff ran.
>
> Plaintiff had a sinking feeling and reluctantly realized her uncle, N. Fabiani, was driving the car with his daughters in the back seat.

(*Id.* at 41-42.)

Second, Plaintiff contends that Defendants committed wire fraud:

> R. Fazzone's Facebook Posting in April 2020 upon the death of plaintiff's mother, Adelaide F. Mottola is a violation of 18 U.S.C. § 1343 (wire fraud), an overt act in furtherance of conspiracy to extort and kidnap. Postings by siblings Anthony Fazzone and Carly Fazzone are also a violation of 18 U.S.C. § 1343.

(*Id.* at 101.)

Finally, Plaintiff contends that extortion crimes occurred at Cravath before and during her time in its paralegal program: "Extortion and Attempted Extortion in 1983 in Cravath's office – Pursuant to unlawful interference by M. DeNegre., R. Fazzone and others, induce relinquishment of employment by unlawful strategies, pressures and implied threat." (*Id.* at 111.) As noted above, Plaintiff asserts that she "was a victim of in office crime [and] constructively discharged by [Cravath]." (*Id.* at 15.)

Plaintiff seeks money damages and an order of protection prohibiting Defendants "from communicating indirectly or directly with the Plaintiff, pressuring the Plaintiff in any way, advancing the informal, out of court arguments and claims to Plaintiff's diplomas." (*Id.* at 183.)

## DISCUSSION

A.   **Claims under the Racketeer Influenced and Corrupt Organizations Act**

Plaintiff asserts claims under the civil provision of RICO, which "creates a private right of action for individuals to enforce the RICO statute." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322 (E.D.N.Y. 2004). The civil RICO enforcement provision states that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] . . . may sue . . . in any appropriate United States district court and shall recover threefold the damages[.]" 18 U.S.C. § 1964(c).

In order to state a violation of Section 1962, a plaintiff must allege facts showing: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting Section 1962(a)-(c)). Put simply, the plaintiff must plead facts plausibly suggesting the existence of a criminal enterprise affecting commerce and a pattern of racketeering activity consisting of two or more related criminal acts in which the defendants participated.

To state a claim of a civil RICO conspiracy under Section 1962(d), a plaintiff must allege facts showing that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999).

Plaintiff fails to state a claim under civil RICO – either a claim for civil enforcement or one of conspiracy – because she does not plead facts suggesting that Defendants (1) participated in a criminal enterprise and (2) engaged in criminal activity that both benefited the criminal

7

enterprise and affected interstate or foreign commerce. Rather, Plaintiff describes a decades-long dispute with her family. This dispute, however, does not amount to a RICO violation because Plaintiff's family, as it relates to her, is not shown to be a criminal enterprise that engages in racketeering activity that affects any commerce. The Court therefore dismisses these claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.      Supplemental Jurisdiction**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**C.      Leave to Amend Denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Plaintiff's complaint cannot be cured with an amendment. Her allegations cannot support a claim under RICO. The Court therefore declines to grant Plaintiff leave to amend her complaint.

## CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment in this action.

SO ORDERED.

Dated:   August 6, 2024
         New York, New York

                                           /s/ Laura Taylor Swain
                                           LAURA TAYLOR SWAIN
                                      Chief United States District Judge